UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN W. LAFORGE** | **CIVIL ACTION** |
| **VERSUS** | **No. 07-523** |
| **ECC OPERATING SERVICES, et al.** | **Section I/4** |

ORDER AND REASONS

Before the Court is a motion for summary judgment[1] filed by Newpark Mats and Integrated Services, LLC, as successor in interest to Soloco TX, LLC, as successor by merger to Soloco, LLC (collectively referred to herein as "Soloco"). For the following reasons, Soloco's motion for summary judgment is **DENIED.**

BACKGROUND

Plaintiff, John W. LaForge ("LaForge"), filed his original petition in state court against Environmental Chemical Corporation and ECC Operating Services Incorporated (collectively referred to herein as "ECC"), alleging that he was operating a dump truck at the ECC-controlled Empire Dump Facility on January 19, 2006 when the ground beneath his truck gave way and caused his truck to tip over and fall into a nearby vehicle.[2] Plaintiff alleges that as a result of the accident, he sustained serious and disabling physical

---

[1] Rec. Doc. No. 178.

[2] Rec. Doc. No. 1-2, pp. 4-5, paras. IV-VI. Defendants removed this lawsuit to this Court on January 26, 2007. Rec. Doc. No. 1.

1

and mental injuries and that his truck became inoperable.[3] Plaintiff claims that ECC was negligent in directing plaintiff to a dump area that was unstable and unfit for its intended purposes and permitting trucks to dump in close proximity to other trucks.[4]

Plaintiff amended his complaint to name several other defendants, including Envirocon, Inc. ("Envirocon"),[5] National Union Insurance Company as insurer for ECC,[6] Coastwide Disaster Relief and Recovery, LLC ("Coastwide"), Inc.,[7] Canal Insurance Company as insurer for Coastwide, and Soloco.[8]

Plaintiff alleges that the United States Army Corps of Engineers ("the Corps") awarded ECC a contract to dispose of debris from Hurricane Katrina and to design, maintain and operate the Empire Pit dump site in Plaquemines Parish.[9] Plaintiff contends that ECC then entered into a subcontract with Envirocon on September, 2005, and a work authorization in December, 2005, for Envirocon to construct access and haul roads and place dump pads

---

[3] *Id.* at paras. VII-VIII.

[4] *Id.* at IX.

[5] Rec. Doc. No. 19 at para. IV.

[6] Rec. Doc. No. 37.

[7] Rec. Doc. No. 32; Rec. Doc. No. 73.

[8] Rec. Doc. No. 129.

[9] *Id.* at V.

and grinding pads at the Empire dump.[10] According to plaintiff, Envirocon then subcontracted with Soloco to manufacture, supply, and maintain the necessary mats and dump pads.[11]

Plaintiff alleges that Envirocon terminated its contract with ECC before plaintiff's accident and that Coastwide assumed the operation. However, plaintiff argues that the mats were not altered or modified during the change of subcontractors.[12]

Plaintiff contends that Soloco's negligence "in constructing, manufacturing, maintaining, and/or installing" the mats contributed to the danger of the dump site.[13] Plaintiff also alleges that the mats were defective, failed to provide stability to the ground, and "gave way."[14]

Soloco filed this motion for summary judgment, arguing that it should be dismissed as a defendant from the lawsuit because it is statutorily immune from liability based on its adherence to specifications. Soloco also contends that it had no obligation to maintain the mats and, therefore, plaintiff cannot prove that it breached a duty or acted negligently.

---

[10] *Id.* at V, VI.

[11] *Id.* at VII.

[12] *Id.* at IX.

[13] *Id.* at XIV.

[14] *Id.*

**LAW AND ANALYSIS**

I. **STANDARD OF LAW**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). If, on the other hand, the moving party bears the burden of proof on an issue, it "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194.

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material

fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.  *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II. DISCUSSION

### A. Defense of Contractual Immunity

Soloco argues that the Court should dismiss plaintiff's claims against it because Louisiana law "precludes an action against a contractor [who] strictly adheres to the plans,

5

specifications and instructions provided to it."[15]

Under Louisiana law, a contractor has a duty to third parties "to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations." *Lyncker v. Design Eng'g, Inc.*, 988 So. 2d 812, 814 (La. Ct. App. 4th Cir. 2008)(citing *Cormier v. Honiron Corp.* 771 So. 2d 193, 197 (La. Ct. App. 3d Cir. 2000)). However, Louisiana law provides a contractor who follows the plans and specifications of another party with immunity from liability. *Id.; Cormier*, 771 So. 2d at 197 ("[A] contractor is not a guarantor of the sufficiency of the plans and specifications which another person draws."). Louisiana Revised Statute § 9:2771 states:

> No contractor...shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.

Although the statute, on its face, does not address claims filed by third parties for injuries allegedly resulting from the

---

[15] Rec. Doc. No. 178.

contractor's compliance with specifications, Louisiana courts have extended the contractor's immunity to such claims. *Richard v. State*, 610 So. 2d 839, 840 (La. Ct. App. 1st Cir. 1993). The immunity, however, is not absolute. *Lyncker*, 988 So. 2d at 815.

In order to avoid liability for tort claims brought by third parties, the contractor must also prove "either that the condition was not hazardous or that it had no justifiable reason to believe that its adherence to the plans and specifications created a hazardous condition." *Id.*; *Richard*, 610 So. 2d at 840("Louisiana appellate courts have extended the statutory immunity of R.S. 9:2771 to third-party tort claims when the contractor can prove it had no justifiable reason to believe adherence to the plans and specifications would create a hazardous condition."); *Nolan v. S&W Steel Fabricators, Inc.*, 600 So. 2d 929, 932 (La. Ct. App. 2d Cir. 1992) ("LSA-R.S. 9:2771 does not strictly insulate a contractor, as the jurisprudence holds that a contractor is not relieved of liability to third parties if he has justifiable reason to believe that adherence to the plans and specifications would create a hazardous condition.").

Louisiana law recognizes LSA-R.S. §9:2771 as an affirmative defense and considers the "reason to believe" factor an essential element of the defense. *Martin v. Boh Bros. Constr. Co.*, 934 So. 2d 196, 197 (La. Ct. App. 4th Cir. 2006); *Morgan v. Lafourche*

*Recreation Dist. No. 5*, 822 So. 2d 716, 722 (La. Ct. App. 1st Cir. 2002) As such, Soloco carries the burden on a Rule 56 motion to establish "beyond genuine dispute" each essential element of the immunity defense, including that it had no justifiable reason to believe that its adherence to plans created a hazardous condition. *See Watson v. Allstate Tex. Lloyd's*, 224 Fed. App'x 335, 338 (5th Cir. 2007) ("For a defendant to obtain summary judgment on an affirmative defense, it must establish each of the defense's essential elements beyond genuine dispute."); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

Soloco contends that it is undisputed that it followed Environcon's specifications and instructions in installing the mats. Soloco offers deposition testimony and a declaration of its field superintendent, made under penalty of perjury pursuant to 28 U.S.C. § 1746, to show that Soloco followed ECC and Envirocon plans,[16] that Envirocon instructed Soloco to use only one layer of mat,[17] and that ECC was satisfied with Soloco's work.[18] With

---

[16] In response to whether Soloco followed "to the letter the plans and specifications," ECC representative Christopher Rhodes testified, "Without seeing the plans and specifications and further reports and inquiries, I cannot say to the letter. As far as I know and the fact that Soloco performed the tasks and left without further comment, I would assume that, yes." Rec. Doc. No. 178-13, p. 14.

[17] A Soloco field superintendent states in his declaration that Envirocon instructed Soloco to stop installing two layers of mats on the west side of the pit and to use the two mats to install a temporary roadway and dump pad on the east side. Rec. Doc. No. 178-7, para. 8.

[18] Rec. Doc. No. 178-13, p. 20.

respect to the second element of the defense, i.e., that the condition was not hazardous or that Soloco had no justifiable reason to believe its compliance with plans would create a dangerous condition, Soloco only submits its field superintendent's declaration to show that Soloco was never asked to conduct a soil analysis or any other testing before installing the mats and that Envirocon informed Soloco that one mat would suffice.[19]

Evidence that Soloco was not asked to test the soil and that Envirocon had informed Soloco that one mat was adequate does not indisputably establish that there was no hazardous condition or that Soloco had no justifiable reason to believe that its installation of only one mat created a hazardous condition. Plaintiff identifies evidence that Soloco was the expert on mat installation, not the Corps, ECC, or Envirocon.[20] Soloco's

---

[19] Rec. Doc. No. 178-2, pp. 5,11; Rec. Doc. No. 178-7, paras. 7, 9.

[20] Rec. Doc. No. 195-32, p. 18 ("Well, that's why we hired Soloco, because they're the experts. It's a specialty subcontractor. We're not mat experts."); Rec. Doc. No. 195-8, pp. 20-22 ("Q: So basically when it comes to whether mats are installed properly or not, someone else needs to address that issue, not you? A: Soloco probably needs to address that issue."); Rec. Doc. No. 195-9, p. 40 ("We rely on the subcontractors' expertise to do the work.").
    Soloco cites Louisiana cases to argue that as contractor it had "no duty to examine plans and specifications provided by the owner to determine if those plans are adequate or deficient." *Dumas v. Angus Chemical* Co., 729 So. 2d 624 (La. Ct. App. 2d Cir. 1999) (citing Gretna *Glass & Mirror Works, Inc. v. Crescent City Baptist Church,* 357 So. 2d 836, (La. Ct. App. 4th Cir. 1978)). However, the facts in both of the cited cases are distinguishable from the evidence proffered in this case. The contractor in *Gretna Glass* had "no special knowledge" as to particular materials required by specifications, and the contractor in *Dumas* received detailed specifications not just as to the installation of its product, but also as to its design, its layout and its required components. *Gretna Glass*, 357 So. 2d at 837; *Dumas*, 729 So. 2d at 628-29.

installation manual states that soil conditions, load and traffic requirements, and project duration "all impact the number of mats" needed.[21] Plaintiff submits correspondence and invoices which indicate that Soloco had "examined the [Empire Pit] job site."[22] Soloco's field superintendent admits in his declaration that he recommended two layers of mats.[23] He states that he based his recommendation on his uncertainty as to the number and weight of trucks using the site and the duration of operations. Soloco has not established the essential elements of its immunity defense "beyond genuine dispute" and a genuine issue of material fact exists with respect to whether Soloco is immune from liability under LSA-R.S. § 9:2771.

B. **Plaintiff's Claims**

Soloco also contends that plaintiff cannot show that Soloco was negligent because Soloco had no obligation to maintain the mats and, accordingly, it did not breach a duty. Soloco characterizes plaintiff's claim of negligence as "custodial liability," where the "owner and custodian of a thing" are liable for damage that results from defect or ruin of the thing "only

---

[21] Rec. Doc. No. 195-19, p. 6.

[22] Rec. Doc. No. 195-12. Plaintiff also offers deposition testimony of Soloco representative Corey Fontenot that the site contained "soupy mud" and that he had "witnessed the type of mud this was." Rec. Doc. No. 195-25, p. 2. The Court considers this testimony with caution, given that the excerpt does not include the beginning or end of this line of questioning and it does not indicate the context of the testimony.

[23] Rec. Doc. No. 178-7, para. 4.

upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." La. Civ. Code Ann. art. 2317.1 (1997).[24]

Soloco presents substantial evidence that it had no duty to maintain the mats upon installation, including deposition testimony of an ECC representative that the responsibility fell on ECC, not Soloco, through its subcontractors, Envirocon and Coastwide.[25] Soloco also offers its superintendent's declaration that Soloco did not maintain or clean the mats and that Soloco provided instructions on how to remove and reinstall the mats.[26] Certain exhibits plaintiff submits, i.e. a subcontract task order stating that the contractor as opposed to the subcontractor "shall keep the mats in good order and repair,"[27] indicate maintenance was not Soloco's responsibility.

Notwithstanding, plaintiff's claims are not limited to negligence in maintaining the mats. In the fourth supplemental and amending complaint, paragraph XIV, plaintiff states: "Among

---

[24] In its opposition memorandum, plaintiff also cites La. Civ. Code Ann. art. 2315 as a theory of liability. The Court's analysis is not altered such description.

[25] Rec. Doc. No. 178-13, pp. 4-5, 17-21.

[26] Rec. Doc. No. 178-7, paras. 12 -14.

[27] Rec. Doc. No. 195-11, p. 18.

the elements that rendered the location so unsafe as to cause the subject accident are Soloco/Newparks's negligent or willful acts or omissions in constructing, manufacturing, maintaining, and/or installing the mats/pads and related materials used at the Empire Pit."[28]

Under Louisiana law, plaintiff has the burden of proving his claim for negligence in accordance with a duty-risk analysis.[29] *Broussard v. Voorhies*, 970 So. 2d 1038, 1042-43 (La. Ct. App. 1st Cir. 2007). Despite deposition testimony that Soloco had complied with specifications in installing the mats[30] and that other parties subsequently moved the mats,[31] plaintiff produces sufficient evidence to demonstrate a genuine issue as to whether Soloco breached its duty of care by ignoring its own recommendation for a double layer of mats and installing only one layer of mat. Plaintiff directs the Court's attention to evidence, including the §1746 declaration from a Soloco

---

[28] Rec. Doc. No. 129.

[29] In an action for negligence, the plaintiff has the burden of proving (1) that the defendant had a duty to act in accordance with a specific standard, (2) that the defendant's conduct did not conform to that standard, (3) that the defendant's conduct was the cause-in-fact of plaintiff's injuries,(4) that the defendant's conduct was the legal cause of plaintiff's injuries and (5) that the plaintiff sustained damages. *Broussard*, 970 So. 2d at 1042-43.

[30] Rec. Doc. No, 178-13, pp. 12, 14, 20.

[31] Rec. Doc. No. 178-16, p. 5.

superintendent and the Soloco installation manual,[32] that Soloco installed one layer of mat despite its recommendation for two layers and its knowledge that such a determination requires consideration of several factors.

Soloco's evidence that another entity had performed a soil analysis does not conclusively establish that Soloco did not breach its duty in installing one layer.[33] Plaintiff submits deposition testimony that the analysis was "an environmental study,"[34] and an engineering report that Soloco submits indicates that the focus of the soil analysis was on identifying environmentally hazardous substances like petroleum, not assessing the soil's strength as necessary for a mat determination.[35] Furthermore, Soloco's own manual lists a number of factors, beyond soil conditions, that "all impact the number of mats," including bearing capacity of the sub-grade, load and traffic requirements, and duration of the project.[36]

Finally, plaintiff states a products liability claim against Soloco. Plaintiff's fourth supplemental and amending complaint

---

[32] Rec. Doc. No. 178-7; Rec. Doc. No. 195-19, p. 6.

[33] Rec. Doc. No. 178-7; Rec. Doc. No. 178-13, p. 9.

[34] Rec. Doc. No. 195-8, p. 41.

[35] Rec. Doc. No. 178-8, p. 5. In a deposition, an ECC representative testified that the dirt described in the engineering report was strong enough to support the weight of bulldozers. Rec. Doc. No. 178-13, p. 10.

[36] Rec. Doc. No. 195-19, p. 6.

alleges that Soloco's mats were defective, in that they failed to provide the necessary stability to the ground, and that Soloco failed to warn of the defective nature of the mats.[37] Soloco does not address this claim and, accordingly, fails to identify portions of the record that demonstrate the absence of a genuine issue of material fact with respect to plaintiff's product liability claim.

Accordingly,

**IT IS ORDERED** that Soloco's motion for summary judgment is **DENIED**.

New Orleans, Louisiana, November 25th, 2008

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[37] Rec. Doc. No. 129, para. XIV.