UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN W. LAFORGE                                            CIVIL ACTION

VERSUS                                                     No. 07-523

ECC OPERATING SERVICES, et al.                             Section I/4

ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Canal Indemnity Company ("Canal") with respect to a coverage exclusion in the policy it issued to defendant, Coastwide Disaster Relief and Recovery, LLC ("Coastwide"). For the following reasons, Canal Indemnity's motion for summary judgment is **DENIED.**

BACKGROUND

Plaintiff, John W. LaForge ("LaForge"), filed his original petition in state court against Environmental Chemical Corporation and ECC Operating Services Incorporated (collectively referred to herein as "ECC"), alleging that he was operating a dump truck at the ECC-controlled Empire Dump Facility on January 19, 2006 when the ground beneath his truck gave way and caused his truck to tip over and fall into a nearby vehicle.[1] Plaintiff alleges that as a result of the accident, he sustained serious and disabling physical

---

[1] Rec. Doc. No. 1-2, pp. 4-5, paras. IV-VI. Defendants removed this lawsuit to this Court on January 26, 2007. Rec. Doc. No. 1.

1

and mental injuries and that his truck became inoperable.[2]

Plaintiff amended his complaint to name several other defendants, including Envirocon, Inc. ("Envirocon"),[3] National Union Insurance Company as insurer for ECC,[4] Coastwide,[5] Canal Indemnity as insurer for Coastwide, and Newpark Mats and Integrated Services, LLC, as successor in interest to Soloco TX, LLC, as successor by merger to Soloco, LLC (collectively referred to herein as "Soloco").[6]

Plaintiff alleges that the United States Army Corps of Engineers ("the Corps") awarded ECC a contract to dispose of debris from Hurricane Katrina and to design, maintain and operate the Empire Pit dump site in Plaquemines Parish.[7] Plaintiff contends that ECC then entered into a subcontract with Envirocon in September, 2005.[8] Plaintiff alleges that Envirocon terminated its contract with ECC before plaintiff's accident and that Coastwide assumed the operation.[9]

---

[2] *Id.* at paras. VII-VIII.

[3] Rec. Doc. No. 19 at para. IV.

[4] Rec. Doc. No. 37.

[5] Rec. Doc. No. 32; Rec. Doc. No. 73. Canal Indemnity Company was incorrectly named as Canal Insurance Company. Rec. Doc. No. 176.

[6] Rec. Doc. No. 129.

[7] *Id.* at V.

[8] *Id.* at V, VI.

[9] *Id.* at IX.

According to plaintiff's complaint, ECC, Envirocon and Coastwide "were required to properly maintain the Empire Pit and provide a safe place" for plaintiff and other haulers to dump hurricane debris.[10] Plaintiff alleges that ECC, Envirocon and Coastwide were negligent in "[r]equiring plaintiff to utilize a dump area which was unstable and unfit for its intended purposes," [o]perating a dump site in a dangerous and hazardous condition," and "[f]ailing to properly inspect the subject facility to assure that the dump locations were stable and fit for their intended purposes."[11]

Canal Indemnity filed this motion for summary judgment, arguing that the policy it issued to Coastwide only provides coverage for injuries arising out of debris removal by Coastwide, not injuries arising out of Coastwide's operation and management of a dump site.

## LAW AND ANALYSIS

**I. STANDARD OF LAW**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the

---

[10] *Id.* at para. VII.

[11] Rec. Doc. No. 73, para. XI.

court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). If, on the other hand, the moving party bears the burden of proof on an issue, it "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194.

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II. DISCUSSION

Canal Indemnity issued a commercial liability policy to Coastwide that was effective at the time of plaintiff's alleged injury. However, Canal Indemnity contends that its policy does not cover the type of work Coastwide was engaged in at the time of plaintiff's alleged injury.

Canal Indemnity directs the Court to a special exclusion endorsement in its policy that limits coverage to injuries arising out of operations "classified and shown" in the policy's declarations, endorsements and supplements.[12] The only

---

[12] Rec. Doc. No. 214-7, p. 41. The endorsement provides:
LIMITATION–CLASSIFICATION
This insurance applies to "bodily injury," "property damages," "personal injury," "advertising injury," or medical expense arising out of only those operations which are classified and shown on the Commercial General Liability Coverage Declarations, its endorsements, and supplements.

5

classification listed in the policy is "debris removal–construction site."[13] Canal Indemnity argues that this classification is clear and unambiguous and, therefore, the Court should determine that its policy does not cover Coastwide's operation and management of the Empire Pit dump site because such activities do not constitute "debris removal."

Under Louisiana law,[14] the judiciary's role in interpreting an insurance policy is to ascertain the common intent of the parties. *Am. Elec. Power Co.,* WL 130187, at *2 (5th Cir. Jan. 21, 2009); *Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 516 (5th Cir. 2005); *Bonin v. Westport Ins. Corp.*, 930 So. 2d 906, 910 (La. 2006); La. Civ. Code Ann. art. 2045. The words used in an insurance

---

[13] Rec. Doc. No. 214-7, p. 2.

[14] Because the Court's subject matter jurisdiction in this case is premised upon diversity of citizenship, state law applies to the substantive issues before the Court. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188, 1194 (1938)). The Court must apply the choice-of-law principles of the forum state, in this case Louisiana. *Id.*(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). Under Louisiana's choice-of-law principles, the law of the state where the insurance policy was issued generally governs the interpretation of the policy. *Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, No. 07-31061, 2009 WL 130187, at *5, n.2 (5th Cir. Jan. 21, 2009). In this case, Canal Indemnity issued and delivered the policy to Coastwide in Florida. However, the Fifth Circuit has held that when there is no conflict between the law of the forum state and the law of the state where the policy was issued, "no-conflict-of-law analysis is necessary and the forum law applies." (citing *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005)).
   The parties have not identified any conflict between the law of Louisiana and Florida with respect to the interpretation of insurance policies. Nor does the Court find any conflict between the rules of interpretation cited by the parties. Therefore, the Court applies the law of the forum state, Louisiana. *Id.*(citing *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005)).

6

policy must be given their generally prevailing meaning. *Id; Coleman*, 418 F.3d at 516; *Bonin*, 930 So.2d at 910; *see* La. Civ. Code Ann. art. 2047. Where these words are "clear and explicit and lead to no absurd consequences, the [policy's] meaning and the intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence." *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 440 (5th Cir. 2002)(quoting *Am. Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993)); *Coleman*, 418 F.3d at 518 (quoting *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 764 (La. 1994)); *Campbell v. Melton*, 817 So. 2d 69, 75 (La. 2002).

The insurer carries the burden of proving that the insured's loss comes within a policy exclusion. *La. Maint. Servs. Inc. v. Certain Underwriters at Lloyd's*, 616 So. 2d 1250, 1252 (La. 1993). An ambiguous provision in an insurance policy is generally construed in favor of coverage. *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). Moreover, "equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer." *Id.; Huggins v. Gerry Lane Enters., Inc.*, 957 So. 2d 127, 129 (La. 2007); *La. Maint. Servs.*, 616 So. 2d at 1252. The rule of strict construction only applies if a policy provision is susceptible to two or more interpretations and each of the alternative interpretations is reasonable. *Huggins*, 957 So. 2d at 129; *Cadwallader*, 848 So. 2d at 580.

7

According to Canal Indemnity, plaintiff's complaint alleges injuries resulting from Coastwide's management and operation of a dump site, not "debris removal." Plaintiff alleges that he was assigned to dump a load of debris at the Empire Pit and that Coastwide was negligent in requiring him to utilize an unstable and unfit dump site, failing to properly inspect the dump site, and failing to warn him of the unstable and unsafe conditions.[15] Canal Indemnity also contends that the scope of Coastwide's work did not include debris removal. Coastwide's contract with ECC sets forth its operations as follows: "[a]ccept debris at either

---

[15] Rec. Doc. No. 73, para. XI. Plaintiff alleges that:
  The cause of the accident...was due to the following negligent acts of omission or commission of the defendants, but not in any way limited thereto:
  (1) Requiring plaintiff to utilize a dump area which was unstable and unfit for its intended purposes;
  (2) Operating a dump site in a dangerous and hazardous condition;
  (3) Failing to properly inspect the facility to assure that the dump locations were stable and fit for their intended purposes;
  (4) Failing to warn the plaintiff of the unstable, unsafe and dangerous conditions of the soil and the dump location;
  (5) Allowing vehicles to dump too close to other trucks when the defendants knew or should have known of other tip-overs and unstable conditions;
  (6) Failing to maintain proper rules and regulations concerning the length of trailers;
  (7) Allowing people to utilize the dump facility when the defendants knew or should have known that the facility was dangerous, unstable, and hazardous after having been informed of prior unstable conditions, prior tip-overs, and prior stuck vehicles.
  (8) Failing to use adequate procedural controls to assure a safe location for dumping;
  (9) Failing to properly inspect the vehicle before the dumping process;
  (10) Failing to do what they should have done;
  (11) Failing to see what they should have seen;
  (12) Any and all acts of negligence to be shown at that trial of this matter.

Empire Pit or Empire Park from Parish and ECC contractors, facilitate / support household hazardous waste removal ( HHW will be removed by others) stockpile and maintain stockpile as needed," "[p]erform grinding operations at Empire Pit including loading and unloading grinding, dust control, and maintenance," "[p]lace and compact shredded and non shredded waste material in Empire Pit including pumping water out of pit and maintaining roadway as needed," and "[h]aul stockpiled material from Empire Park to Empire Pit."

Co-defendants, Soloco and Envirocon, argue that Coastwide's operation and management of the Empire Pit as a dump site for debris clearly fall within the meaning of "debris removal."[16] Envirocon contends that all of the entities associated with the Empire Pit "were in some way involved in debris removal."[17] According to Envirocon, Coastwide's work of accepting debris at the Empire Pit, facilitating waste removal, stockpiling, and performing grinding operations must be construed as "debris removal."

---

[16] Envirocon also argues with supporting evidence that the Empire Pit is a construction site because it had to be routinely constructed and modified to respond to the debris removal operations. Rec. Doc. No. 236. Other than the one statement that "the Empire Pit was a landfill/dump site, not a construction site," Canal Indemnity does not offer evidence to show that the Empire Pit could not qualify as a construction site. Rec. Doc. No. 214-2, p. 6.

[17] Rec. Doc. No. 236, p. 4.

The phrase "debris removal-construction site" is not clear and unambiguous as Canal Indemnity contends. The policy lists only those four words, i.e., "debris removal-construction site," and a numerical code, i.e. 91629. There is no definition, description, or example of activities encompassed by or excluded by the classification. Canal Indemnity representative, David Johnson ("Johnson"), acknowledged the lack of definition and explanation in a deposition. His responses to questioning concerning this classification further indicate the difficulty in clearly defining the scope of operations covered by the policy.[18]

The absence of a clear definition and description of "debris removal-construction site" makes the classification susceptible

---

[18] Rec. Doc. No. 235-4, p.111:
Q. Is there a definition anywhere that gives any further elaboration as to what this entails?
A. The only thing that I could find was that some companies will add what they feel it doesn't cover, but the basic ISO definition is just what the code reads.
Q. And what is that?
A. Just the debris removal type and construction site.
Q. What does that mean to you?
A. It means someone out performing cleanup operations other than what you would normally think of as a garbage or trash hauler, where the work is basically accumulating the debris and hauling it off.

Plaintiff also submits evidence that once an agent for Canal Indemnity's broker, Kite Insurance Agency, enters a numerical code, in this case 91629, the "debris removal-construction site" classification is generated by computer. According to deposition testimony, the manuals relied upon by the brokers provide no further description of the coverage classification beyond "debris removal-construction site."Rec. Doc. No. 235-4, p. 88-89. "
The ambiguity of this classification is further evidenced by the fact that after Coastwide changed its operations from mulching debris it had collected from independent contractors to performing hurricane cleanup pursuant to its contract with ECC, Canal Indemnity maintained the same classification and code. Rec. Doc. No 235-4, pp. 58-69,92.

to more than one reasonable interpretation. As operator of the dump site, Coastwide was solely on the receiving end of debris removal. As such, it can be argued that Coastwide's mere acceptance and receipt of debris from haulers may not constitute "debris removal." Indeed, Johnson testified in a deposition that "debris removal" does not include "anything to do with the operation of the site where it was being hauled to. That would come under a different classification."[19]

On the other hand, "debris removal" does not necessarily imply that Coastwide, itself, must load and haul debris from one location to another as plaintiff did before he was allegedly injured. Instead, such broad language may reasonably encompass the entire debris removal process from the loading and hauling of debris to the dumping, receiving, shredding and grinding of the debris. While plaintiff allegedly hauled debris to the Empire Pit, the evidence shows that it was Coastwide's responsibility to "[a]ccept debris...facilitate/support household hazardous waste

---

[19] Rec. Doc. No. 235-4, p. 114. Canal Indemnity also submits an affidavit from Johnson, wherein he states that the proper classification code is "Garbage or Refuse Dumps" and that Canal Indemnity does not issue policies for that classification. Rec. Doc. No. 244-4, paras. 5, 6. However, such evidence is not sufficient for the Court to conclude as a matter of law that Coastwide's operations at the Empire Pit are not covered. Neither the affidavit nor the attached classification manual provides a definition or description of "Garbage or Refuse Dumps." Rec. Doc. No. 244-4, p. 3. As such, the Court cannot determine as a matter of law that Coastwide's operations come within that classification as opposed to the "debris removal-construction site" classification. Furthermore, even if Coastwide performed operations that fall within the "Garbage or Refuse Dumps" classification, that does not necessarily mean that Coastwide's operations do not also come within the "debris removal-construction site" classification.

removal...[p]erform grinding operations...[p]lace and compact shredded and non shredded waste material in Empire Pit...[and][h]aul stockpiled material...." Such operations could reasonably be construed as additional steps within the debris removal process. Moreover, deposition testimony indicates that Canal Indemnity never sent correspondence or communications denying coverage or stating that those operations did not come within the coverage provided by the policy's limited classification, "debris removal–construction site."[20]

Because there is more than one reasonable interpretation of "debris removal," the classification at issue is ambiguous and summary judgment is inappropriate.[21] *See Sanchez v. Callegan*, 753 So. 2d 403, 405 (La. Ct. App. 1st Cir. 2000) ("[S]ummary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, under which coverage could be afforded."); *Boutin v. Rodrigue*, 969 So. 2d 713, 715 (La. Ct.

---

[20] Rec. Doc. No. 235-4, pp. 17-18, 32, 72-76.

[21] Canal Indemnity cites two cases where Louisiana courts granted summary judgment and denied insurance coverage for operations conducted beyond the scope of a classification. *See, e.g. Wickramasekra v. Associated Int'l Ins. Co.*, 890 So. 2d 569 (La. Ct. App. 4th Cir. 2003); *Caldwell v. Farwell Contracting*, 831 So. 2d 332 (La. Ct. App. 5th Cir. 2002). However, in both cases, it was clear to the courts that the operations the insurer sought to exclude from coverage did not come within the coverage classifications at issue.

App. 3d Cir. 2007) ("[T]his court found the contract to be ambiguous; consequently, we held that there were genuine issues of material fact precluding summary judgment."). A genuine issue exists with respect to the type of operations encompassed by the phrase "debris removal-construction site." Therefore, at this stage of the proceedings, the Court cannot conclude as a matter of law that the Canal Indemnity policy does not cover injuries arising out of Coastwide's operation and management of the Empire Pit.[22]

For the foregoing reasons, Canal Indemnity's motion for summary judgment is **DENIED**.

New Orleans, Louisiana, February 3, 2009.

									**LANCE M. AFRICK**
									**UNITED STATES DISTRICT JUDGE**

---

[22] Because the Court finds that the policy classification is ambiguous and that summary judgment is inappropriate, it is not necessary at this stage for the Court to resolve whether Canal Indemnity had knowledge that Coastwide was operating a dump site. The Court also need not reach plaintiff's alternative argument that the policy's special exclusion limiting coverage to "debris removal-construction site" did not remain effective when Canal Indemnity modified the policy and added declaration pages.